| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY<br>**Caption in compliance with D.N.J. LBR 9004-2(c)**<br>**VENABLE LLP**<br>Gregory A. Cross (*pro hac vice*)<br>750 East Pratt Street, Suite 900<br>Baltimore, Maryland 21202<br>Tel: (410) 244-7400<br>Fax: (410) 244-7742<br>gacross@venable.com<br><br>       - and -<br><br>**VENABLE LLP**<br>Patrick J. Boyle<br>Rishi Kapoor (*pro hac vice*)<br>1270 Avenue of the Americas, 24th Floor<br>New York, New York 10020<br>Tel.: (212) 307-5500<br>Fax: (212) 307-5598<br>pjboyle@venable.com<br>rkapoor@venable.com<br><br>*Attorneys for Petitioners GECMC 2006-C1*<br>*Carrington Oaks, LLC, COMM 2006-C8 Coveside*<br>*Lane, LLC, and BACM 2006-4 Inverness*<br>*Apartments, LLC* | |
| In re:<br><br>EZRA BEYMAN,<br><br>                          Debtor. | Case No.: 14-28775 (CMG)<br><br>Involuntary Chapter 7<br><br>Hearing Held on May 13, 2015 |

**PETITIONERS' LIST OF MOST RELEVANT EXHIBITS**

Petitioners GECMC 2006-C1 Carrington Oaks, LLC ("Carrington Oaks LLC"), COMM 2006-C8 Coveside Lane, LLC ("Coveside Lane LLC"), and BACM 2006-4 Inverness Apartments, LLC ("Inverness Apartments LLC," and collectively with Carrington Oaks LLC and Coveside Lane LLC, the "Petitioners") respectfully submit the following list of exhibits most relevant to the legal and factual issues in support of denying Debtor's Motion to Dismiss the Involuntary Chapter 7 Petition and granting an Order for Relief under 11 U.S.C. § 303(h).

| **Exhibit(s)** | **Description** | **Relevance** |
|---|---|---|
| A | Involuntary Petition, dated Sept. 12, 2014 | ▪ The Involuntary Petition is based on three unpaid <u>judgment debts</u> owed by Mr. Beyman (as distinct from the underlying guaranty debts that were reduced to judgments), totaling more than $23 million.<br>▪ The Involuntary Petition was filed by three separate and distinct creditors of Mr. Beyman, each of which is owned by a separate and distinct CMBS trust.<br>▪ Each Petitioner holds a separate and distinct certified, final judgment against Mr. Beyman in an amount that far exceeds the statutory threshold under Section 303(b) (*i.e.*, $15,325)<br>▪ Mr. Beyman's complete failure to pay the judgments held by Petitioners demonstrates his willful disregard of his legal obligations and the rule of law. |
| B, C | ▪ Ex. B - Final J. dated Oct. 22, 2012, in favor of Inverness Apartments LLC<br>▪ Ex. C - Cert. of J., dated April 12, 2013 & July 16, 2014 | ▪ The certified final judgment for $3,571,237.50 entered against Mr. Beyman, and in favor of and <u>in the name of petitioner Inverness Apartments LLC</u>, establishes that Inverness Apartments LLC is the real party in interest as a matter of law with respect to this judgment debt.<br>▪ No part of this judgment has been paid, nor is the judgment the subject of a stay or an appeal.<br>▪ Petitioner Inverness Apartments LLC obtained certified judgments in April 2013 and July 2014 in connection with post-judgment enforcement efforts, prior to service of Mr. Beyman's Texas lawsuit. |
| D | Certified Copy of J. in a Civil Case dated Aug. 23, 2013, entered Sept. 4, 2013, in favor of Coveside Lane LLC | ▪ The certified final judgment for $13,500,000 entered against Mr. Beyman, and in favor of and <u>in the name of petitioner Coveside Lane LLC</u>, establishes that Coveside Lane LLC is the real party in interest as a matter of law with respect to this judgment debt.<br>▪ No part of this judgment has been paid, nor is the judgment the subject of a stay or an appeal. |
| E | Certificate of True Copy of J. against Def. Ezra Beyman, dated June 24, 2014, in favor of Carrington Oaks LLC | ▪ The certified final judgment for $6,240,000 entered against Mr. Beyman, and in favor of and <u>in the name of petitioner Carrington Oaks LLC</u>, establishes that Carrington Oaks LLC is the real party in interest as a matter of law with respect to this judgment debt.<br>▪ No part of this judgment has been paid, nor is the judgment the subject of a stay or an appeal. |

| **Exhibit(s)** | **Description** | **Relevance** |
|---|---|---|
| F, G, H, W, X, Y | <ul><li>Ex. F - Assignment of Mortgage and Security Agreement and Other Loan Documents dated Aug. 9, 2010</li><li>Ex. G - Guaranty and Indemnity, dated July 24, 2006</li><li>Ex. H - Compl. dated Dec. 17, 2010, in Alabama guaranty action</li><li>Ex. W - Limited Power of Attorney, dated April 17, 2008</li><li>Ex. X - Operating Agreement of Inverness Apartments LLC, dated April 9, 2010</li><li>Ex. Y - Articles of Organization of Inverness Apartments LLC, dated Apr. 9, 2010</li></ul> | <ul><li>Petitioner Inverness Apartments LLC is a duly formed limited liability company under Alabama law.</li><li>100% of the economic and membership interests in Inverness Apartments LLC are owned by the BACM 2006-4 Trust on behalf of the trust's certificate holders.</li><li>LNR Alabama Partners LLC, a wholly owned subsidiary of LNR Partners LLC, is the <u>non-member</u> manager of Inverness Apartments LLC and has no economic interest in Inverness Apartments LLC.</li><li>The Alabama loan documents and guaranty were assigned to and held by petitioner Inverness Apartments LLC prior to bringing its state court action to enforce the guaranty against Mr. Beyman.</li><li>The action to enforce the Alabama guaranty was brought by petitioner Inverness Apartments LLC in its own name and the Alabama judgment was issued in favor of Inverness Apartments LLC, thereby establishing that Inverness Apartments LLC is the real party in interest with respect to Mr. Beyman's $3.571 million judgment debt.</li></ul> |
| J, K, L, AA, BB, CC | <ul><li>Ex. J - Certificate of Transfer dated July 15, 2010</li><li>Ex. K - Guaranty and Indemnity, dated Dec. 5, 2006</li><li>Ex. L - Am. Compl. dated Aug. 16, 2012, in Virginia guaranty action</li><li>Ex. AA - Limited Power of Attorney, dated Feb. 20, 2008</li><li>Ex. BB - Operating Agreement of Coveside Lane LLC dated Feb. 2010</li><li>Ex. CC - Articles of Organization of Coveside Lane LLC dated Feb. 2010</li></ul> | <ul><li>Petitioner Coveside Lane LLC is a duly formed limited liability company under Virginia law.</li><li>100% of the economic and membership interests in Coveside Lane LLC are owned by the COMM 2006-C8 Trust on behalf of the trust's certificate holders.</li><li>LNR Partners LLC is the <u>non-member</u> manager of Coveside Lane LLC and has no economic interest in Coveside Lane LLC.</li><li>The Virginia loan documents and guaranty were assigned to and held by petitioner Coveside Lane LLC prior to bringing its District Court action to enforce the guaranty against Mr. Beyman.</li><li>The action to enforce the Virginia guaranty was brought by petitioner Coveside Lane LLC in its own name and the Virginia judgment was issued in favor of Coveside Lane LLC, thereby establishing that Coveside Lane LLC is the real party in interest with respect to Mr. Beyman's $13.5 million judgment debt.</li></ul> |

| **Exhibit(s)** | **Description** | **Relevance** |
|---|---|---|
| M | Order dated Aug. 23, 2013 ("Virginia SJ Order") in favor of Coveside Lane LLC | ▪ The District Court for the Eastern District of Virginia conclusively held that Coveside Lane LLC and the other Petitioners did not act in bad faith in the course of settlement discussions, and Petitioners were not obligated to accept Mr. Beyman's settlement proposals as a matter of law (*see* pp. 7-10).<br>▪ The Virginia SJ Order was issued after discovery and full briefing on a motion for summary judgment.<br>▪ The Court further held that the August 2, 2010 letter (Ex. AD-15) is unenforceable as a matter of law (*see* p. 9).<br>▪ In addition, Mr. Beyman cannot collaterally attack the Virginia SJ Order or the amount of the judgment in this forum. The District Court expressly found that taking Coveside Lane LLC's credit bid of $52,000,000 into account still left a deficiency of $28,804,097.65 under the loan (*see* pp. 3-7, 10), which unequivocally refutes Mr. Beyman's purported defense (raised for the first time in his Reply Brief submitted in this case (ECF No. 63)) that the Virginia guaranty is subject to an offset. Under the Virginia guaranty, Mr. Beyman was liable for up to $13,500,000—the exact amount of the Virginia judgment—which precludes an argument that the Virginia judgment is the subject of a bona fide dispute. |
| N, O, P, EE, FF, GG | ▪ Ex. N - Omnibus Assignment of Loan Documents dated Feb. 9, 2011<br>▪ Ex. O - Guaranty and Indemnity, dated Feb. 28, 2006<br>▪ Ex. P - Verified Am. Compl. in North Carolina guaranty action<br>▪ Ex. EE - Limited Power of Attorney, dated Sept. 21, 2009<br>▪ Ex. FF - Operating Agmt. of Carrington Oaks LLC<br>▪ Ex. GG - Cert. of Existence | ▪ Petitioner Carrington Oaks LLC is a duly formed limited liability company under North Carolina law.<br>▪ 100% of the economic and membership interests in Carrington Oaks LLC are owned by the GECMC 2006-C1 Trust on behalf of the trust's certificate holders.<br>▪ LNR Partners LLC is the non-member manager of Carrington Oaks LLC and has no economic interest in Carrington Oaks LLC.<br>▪ The North Carolina loan documents and guaranty were assigned to and held by petitioner Carrington Oaks LLC prior to bringing its state court action to enforce the guaranty against Mr. Beyman.<br>▪ The action to enforce the North Carolina guaranty was brought by petitioner Carrington Oaks LLC in its own name and the North Carolina judgment was issued in favor of Carrington Oaks LLC, thereby establishing that Carrington Oaks LLC is the real party in interest with respect to Mr. Beyman's $6.24 million judgment debt. |

| **Exhibit(s)** | **Description** | **Relevance** |
|---|---|---|
| Q, R, S, T | <ul><li>Ex. Q - E-mails dated April 26-May 16, 2012</li><li>Ex. R - E-mails dated May 22-23, 2012</li><li>Ex. S - E-mails dated June 28, 2012</li><li>Ex. T - E-mails dated June 28, 2012</li></ul> | <ul><li>These e-mails show that Mr. Beyman received notice of the North Carolina action through service of the Amended Complaint in April 2012 (Ex. Q, at p. 2; Ex. R at pp. 1-4)).</li><li>Mr. Beyman's attorneys repeatedly warned that Mr. Beyman's failure to respond to the complaint would result in a default judgment being entered against him (Ex. S at pp. 1, 3; Ex. T at p. 1).</li><li>Despite receiving service and having actual notice of the litigation, and being advised of the consequences of not answering, Mr. Beyman willfully failed to answer, appear, or take any action in response thereto.</li><li>As a result, North Carolina law prevents Mr. Beyman from reopening the case or challenging the final judgment issued by the North Carolina court. The North Carolina judgment is thus not subject to a bona fide dispute.</li></ul> |
| EEE | Confidentiality and Nondisclosure Agreement, dated Jan. 2014 | <ul><li>In January 2014, a year and a half after being served in the North Carolina action, Mr. Beyman signed a Confidentiality and Nondisclosure Agreement in which he acknowledged that he was a named defendant in the then-pending North Carolina action (*see* § 1(b) at p. 2).</li><li>Mr. Beyman never answered or otherwise appeared in the North Carolina action.</li><li>The Confidentiality Agreement was entered into to facilitate Petitioners' post-judgment discovery efforts in the Alabama and Virginia actions (*see* § 5 at p. 3 (PETITIONERS_001822)).</li></ul> |
| U, V | <ul><li>Ex. U - Order on Mot. for Entry of Default against Def. Ezra Beyman dated May 2, 2014, in favor of Carrington Oaks LLC</li><li>Ex. V - J. against Def. Ezra Beyman dated May 13, 2014</li></ul> | <ul><li>As a result of Mr. Beyman's failure to answer, appear, or take any action in the North Carolina litigation, the North Carolina state court entered a default judgment against him.</li><li>Mr. Beyman has not appealed the judgment nor is it the subject of a stay of execution.</li></ul> |
| HH | Beyman Deposition, dated Mar. 26, 2015 | <ul><li>Mr. Beyman is deeply insolvent. He is not paying any of his debts as they come due:</li></ul>(Continued on next page) |

| **Exhibit(s)** | **Description** | **Relevance** |
|---|---|---|
| HH (cont. from prev. page) | | - Mr. Beyman has not made a single payment under any of Petitioners' judgments against him (*see* pp. 24:8-29:25, 41:9-42:14, 65:21-66:12).<br>- Nor has he made any payments under the Fannie Mae judgment or the Arizona judgment (*see* pp. 67:23-71:12, 73:16-77:11; Exs. VV, XX).<br>- The sum total of these judgments exceeds $44 million dollars.<br>- Mr. Beyman also has over $20 million in additional unliquidated guaranty liability (*see* 97:17-104:9, 104:15-109:24, 115:20-120:16, 122:3-125:16, 128:11-133:7, 133:11-137:13, 275:14-276:4).<br>- In most cases, the judgment debts have been past due for over a year, while the underlying guaranty debts have been due for over four years (*see id.*).<br>- Mr. Beyman is not employed, nor has he received any kind of income since 2011 (*see* p. 202:6-25).<br>- Mr. Beyman does not pay any of his debts himself. Mr. Beyman's wife pays the entirety of Mr. Beyman's roughly $10,000 in monthly living expenses, including all rental payments under the lease for his current residence and all of his legal fees (*see* pp. 210:22-211:7, 216:5-222:21, 268:12-23).<br>▪ Mr. Beyman resided at his Monsey, New York residence at the time the North Carolina Amended Complaint was served on him in April 2012 (*see* pp. 18:4-19, 52:3-56:15), and his attorney, Marry Warren, and Mr. Teiler were well aware of the North Carolina litigation at the time (*see* pp. 62:19-63:3), yet Mr. Beyman still defaulted.<br>▪ Mr. Beyman is negotiating a settlement with C-III, a special servicer, in connection with his personal liability under three unrelated guaranties (*see* pp. 84:20-94:14). Mr. Beyman intends to pay the settlement amount by borrowing funds from friends or from his local Jewish community (*see* pp. 91:11-94:14).<br>▪ Mr. Beyman understood that a special servicer is "[a] company designated by either the lender or the bondholders to reach some type of . . . resolution when a loan goes bad," *i.e.*, goes into default (*see* pp. 253:5-254:11). He also admitted LNR never once represented that it was acting in any role other than as special servicer |

| **Exhibit(s)** | **Description** | **Relevance** |
|---|---|---|
| HH (cont. from prev. page) | | (*see* pp. 258:23-259:11). LNR's role as a representative of each of the Petitioners was thus clearly and expressly conveyed to Mr. Beyman. |
| | | ▪ The state of Mr. Beyman's finances, his inability to pay any of his judgment debts, his refusal to provide certified financial disclosures and sit for a post-judgment deposition, and his admitted intention to prefer some of his creditors over others, underscores the urgent need for bankruptcy relief. |
| II | Deposition Transcript of Dmitry Sulsky, dated April 28, 2015 | ▪ Mr. Sulsky is the asset manager assigned to handle the servicing of Mr. Beyman's loans. |
| | | ▪ Mr. Sulsky does not harbor any personal animus towards Mr. Beyman. Mr. Sulsky categorically denies that he ever told Mr. Beyman that he would "bulldoze him," or that he was "gonna get" Mr. Beyman (*see* pp. 117:17-122:6, 118:9-10 (testifying that "at no time had there ever been a statement like this made, ever"), 118:24-25 ("[i]t's not proper. It's not professional. . . I never ever communicate like that with anybody")). |
| | | ▪ Mr. Beyman's claim of personal animosity is further belied by the fact that Mr. Sulsky assisted in settling a personal guaranty of Mr. Beyman under an unrelated loan serviced by LNR (*see* pp. 20:18-22:7). |
| | | ▪ Prior to taking any action on a defaulted loan that could result in foreclosure and taking title to the asset, the special servicer typically forms a single purpose entity for accounting and liability reasons (*see* p. 39:5-17). |
| | | ▪ Several factors evidence Petitioners' clear good faith in bringing the involuntary bankruptcy: |
| | | - Petitioners had been litigating against Mr. Beyman on his guaranty liability for nearly four years before filing the involuntary bankruptcy. During that time, Petitioners were engaged in settlement discussions for nearly the entire time; Petitioners' non-member manager and special servicer, LNR, attended two mediations with Mr. Beyman; Petitioners successfully litigated Mr. Beyman's guaranty liability to final judgments against Mr. Beyman, and pursued a variety of post-judgment collection efforts, to no avail (*see* pp. 63:9-64:18, 65:14-66:12, 68:2-23, 163:25-166:24). |
| | | (Continued on next page) |

| Exhibit(s) | Description | Relevance |
|---|---|---|
| II (cont. from prev. page) | | - While Petitioners were exercising their post-judgment, state court remedies, they also continued, through their non-member manager and special servicer, LNR, to seek Mr. Beyman's cooperation in sitting for a deposition regarding his personal finances in aid of execution of their judgment, but Mr. Beyman refused to comply (*see* pp. 63:15-66:12).<br>- Only <u>after</u> post-judgment efforts failed to produce any real chance of recovery did Petitioners begin contemplating an involuntary bankruptcy proceeding against Mr. Beyman in the first quarter of 2014 (*see* p. 200:20-201:15).<br>- Petitioners began contemplating an involuntary bankruptcy against Mr. Beyman roughly six months prior to the filing of the petition (*see* p. 202:5-10).<br>- The ultimate decision to pursue the Involuntary Petition was made in May 2014, after Petitioners determined that Mr. Beyman was not going to cooperate with their attempts to collect on their judgment debts, his financial statements revealed large transfers, and Bankruptcy Court was the only forum in which Petitioners could recover their fair share of Mr. Beyman's assets while simultaneously pursuing recovery of Mr. Beyman's transferred assets for the benefit of all his creditors (*see* pp. 200:20-203:6, 229:16-235:20).<br>- Petitioners were aware of Fannie Mae's $17 million judgment against Mr. Beyman prior to filing the Involuntary Petition and were concerned that Fannie Mae could use its judgment to collect a disproportionate share of Mr. Beyman's assets (*see* pp. 236:14-238:2; Ex. VV).<br>- Petitioners also had knowledge of other creditors of Mr. Beyman at the time of the petition, as they were aware of the guaranty liability being pursued by other lender SPEs in connection with the loans for which LNR acts as special servicer (*see* pp. 200:20-203:6, 229:20-235:20).<br>▪ The Texas lawsuit brought by Mr. Beyman had nothing to do with Petitioners' decision to pursue the involuntary bankruptcy:<br>- Mr. Beyman's lawsuit was filed four to six months <u>after</u> Petitioners began discussing the Involuntary Petition, |

| **Exhibit(s)** | **Description** | **Relevance** |
|---|---|---|
| II (cont. from prev. page) | | and two to three months <u>after</u> Petitioners decided to pursue the Involuntary Petition (*see* p. 202:5-202:22).<br>- Mr. Sulsky did not get upset or angry about being sued by Mr. Beyman, nor did he take it personally as Mr. Beyman alleges (*see* pp. 32:18-34:2). |
| JJ | Deposition Transcript of Arne Shulkin, dated April 29, 2015 | ▪ Before enforcing its remedies, the CMBS trusts that held the Beyman loans formed special purpose entities (each a "<u>Lender SPE</u>") for accounting and liability purposes, and assigned each of the defaulted loans and the associated rights thereto to a Lender SPE (*see* p. 31:5-25).<br>▪ Prior to the Involuntary Petition, Petitioners' non-member manager and special servicer, LNR, attended mediations with Mr. Beyman and had ongoing discussions with his representatives in an attempt to resolve his guaranty liabilities (*see* pp. 38:15-40:1).<br>▪ Petitioners began contemplating an involuntary bankruptcy proceeding against Mr. Beyman between January and March of 2014, after Mr. Beyman refused to cooperate with Petitioners' request that he sit for a post-judgment deposition regarding his personal assets, and the only post-judgment financial disclosures made by Mr. Beyman showed he was deeply insolvent (*see* pp. 38:15-39:2, 74:13-25).<br>▪ Among other reasons, the decision to file the involuntary petition was made because Mr. Sulsky, the asset manager assigned to service Mr. Beyman's loans, could not get comfortable with Mr. Beyman's financial disclosures.  Mr. Beyman would not sit for depositions, he would not certify his financial disclosures, and there was suspicion that Mr. Beyman was hiding assets (*see* pp. 38:15-41:4).<br>▪ Several people were involved in the decision to pursue the involuntary petition, including Mr. Shulkin, Mr. Sulsky, Dan Ornstein, Danny van der Reis, and Joe Warshaw, as well as inside LNR counsel and outside counsel (*see* pp. 36:8-38:8).<br>▪ Mr. Sulsky did not get upset or angry about being sued by Mr. Beyman (*see* pp. 24:9-12). |

| Exhibit(s) | Description | Relevance |
|---|---|---|
| KK | Certification of Dmitry Sulsky in Opposition to Motion of Debtor Ezra Beyman to Dismiss Involuntary Chapter 7 Petition, dated Dec. 17, 2014 (ECF No. 39) | ▪ Each of the Petitioners is a separate and distinct entity:<br>- Each Petitioner is 100% owned by a <u>different</u> CMBS trust (*see* ¶¶ 2, 7, 10, 12, 14).<br>- The CMBS trusts' are each owned by separate sets of "certificate holders," which are the beneficial owners of the trust's assets (*see* ¶ 3).<br>- Before pursuing legal action against the borrowers, the trustee for each of the CMBS Trusts assigned their interest in the single loan relating to that borrower and the associated rights thereto to a special purpose entity. Petitioners are three such SPEs (*see* ¶ 7).<br>▪ Debtor's alter-ego theory is unsupported by the evidence (*see* ¶¶ 5, 8, 10, 12, 14):<br>- LNR is the special servicer for each of the Beyman loans on behalf of the respective CMBS trusts and lender SPEs to which those loans were assigned following their default (*see* ¶ 5).<br>- As special servicer, LNR is contractually authorized to act as the representative of each CMBS trust pursuant to separate Pooling and Servicing Agreements between the respective CMBS trustee and LNR (*see* ¶ 6).<br>- As special servicer, LNR (or its affiliate, LNR Alabama Partners), was appointed as the non-member manager for each Petitioner (*see* ¶ 8).<br>- LNR, has no economic or ownership rights whatsoever in the Petitioners (*see* ¶¶ 8, 10, 12, 14). |
| LL | Certification of David Teiler in Support of Motion of Ezra Beyman to Dismiss Involuntary Chapter 7 Petition or Abstain, and attached Exhibits, dated Dec. 3, 2014 (ECF No. 35) | ▪ Mr. Beyman is a sophisticated real estate investor with well over two decades of experience owning and operating commercial real estate throughout the country (*see* ¶ 2).<br>▪ As Mr. Teiler certifies, Mr. Beyman and his advisors fully understood the distinction between the Petitioners, as the holders and assignees of underlying loans guaranteed by Mr. Beyman—and therefore the real parties in interest—and LNR, the special servicer of the loans acting on behalf of the various lenders. LNR does not have a direct economic or ownership interest in the Petitioners or their loans/guaranties (*see* ¶¶ 2-7, 39-42). |

| **Exhibit(s)** | **Description** | **Relevance** |
|---|---|---|
| NN, OO, PP, RR, SS | <ul><li>Ex. NN - Post J. Interrogs. and Reqs. for Produc. to Def. Ezra Beyman, filed May 31, 2013</li><li>Ex. OO - Aff. of E. Burton Spence, filed June 5, 2013 in the Supreme Court of Rockland County, NY</li><li>Ex. PP - Aff. in Supp. of Appl. to Record a Foreign J. in N.J., dated Sept. 24, 2013</li><li>Ex. RR - Restraining Notice, served on Oct. 29, 2013</li><li>Ex. SS - Information Subpoena, dated Mar. 11, 2014</li></ul> | <ul><li>Contrary to Mr. Beyman's bald assertions that Petitioners did not pursue post-judgment remedies, these documents establish the multitude of post-judgment enforcement efforts undertaken by petitioner Inverness Apartments LLC, which included:<ul><li>Service of post-judgment interrogatories and requests for production of documents (Ex. NN).</li><li>Domesticating the Alabama judgment in New York and New Jersey (Exs. OO & PP).</li><li>Service of a Restraining Notice under New York law, which prohibits Mr. Beyman, as a judgment creditor, from sell or transfer any property until the judgment is satisfied (Ex. RR).</li><li>Service of a 94-question Information Subpoena requiring Mr. Beyman to provide sworn answers regarding his finances, to which Mr. Beyman never responded (Ex. SS).</li></ul></li><li>Petitioners also sought to take Mr. Beyman's deposition concerning his personal finances. Mr. Beyman refused to sit for such a deposition (*see* Ex. AD-49 at p. 1).</li><li>In addition, Mr. Beyman's claim that Inverness Apartments LLC waited until August 2013 to serve post-judgment discovery misrepresents the facts. Following issuance of the Alabama judgment in October 2012, Mr. Beyman sought to vacate the judgment, which the Alabama court denied in February 2013 (*see* Ex. DDD at 16 (PETITIONERS_000212)). Initial post-judgment discovery was served in May 2013 (Ex. NN).</li></ul> |
| QQ | Def.'s Resps. to Pl.'s Post J. Interrogs. to Def., dated Sept. 25, 2013 | <ul><li>As of September 2013, Mr. Beyman had less than $25 in his checking accounts and less than $200,000 in personal assets. He received no income in 2012 or 2013 (*see* pp. 6, 10, 12, 13). Yet, at the same time, he was making offers in the millions of dollars to settle his guaranty liability.</li><li>This unexplained discrepancy, combined with Mr. Beyman's refusal to sit for a post-judgment deposition, is evidence of Mr. Beyman's lack of disclosure regarding the assets available to satisfy his judgment debts.</li><li>It further establishes that Petitioners had no real chance of recovery through state court enforcement mechanisms.</li></ul> |

- 11 -

| Exhibit(s) | Description | Relevance |
|---|---|---|
| TT, UU | <ul><li>Ex. TT - Aff. of Sarah Kate McConaughy, filed on Dec. 19, 2013 (domestication of Coveside J. in Rockland County, NY)</li><li>Ex. UU - New Jersey Judgment Search Result Details, dated Feb. 23, 2015 (domestication of Coveside J. in NJ)</li></ul> | <ul><li>Following entry of the Virginia judgment, petitioner Coveside Lane LLC domesticated the judgment in both New York and New Jersey.</li><li>Along with petitioner Inverness Apartments LLC, Coveside Lane LLC sought post-judgment disclosure of Mr. Beyman's finances and to take Mr. Beyman's deposition (*see* Ex. EEE).</li></ul> |
| VV, WW | <ul><li>Ex. VV - J. against Ezra Beyman, dated Feb. 3, 2014, Fannie Mae Action</li><li>Ex. WW - Copies of Registered Fannie Mae Js.</li></ul> | <ul><li>In addition to the more than $23 million in judgment debts owing to Petitioners, Mr. Beyman is also liable for a $17 million judgment debt to Fannie Mae issued in February 2014.</li><li>Prior to the involuntary bankruptcy, Fannie Mae registered its judgment against Mr. Beyman in several states.</li></ul> |
| XX | Under Advisement Ruling, dated Aug. 1, 2014 (J. against Ezra Beyman in favor of the plaintiff in the Arizona guaranty litigation) | <ul><li>In addition to the more than $23 million in judgment debts owing to Petitioners and the $17 million judgment owing to Fannie Mae, Mr. Beyman is also liable for a $4.15 million judgment debt entered against him by an Arizona state court (*see* p. 5 (B001124)).</li></ul> |
| YY | Pre-Negotiation Letter dated Feb. 16, 2010 | <ul><li>By signing the Pre-Negotiation Letter, Mr. Beyman expressly acknowledged that:<br>- In the course of his dealings with LNR, LNR was acting solely in its capacity as special servicer (*see* p. 1).<br>- As special servicer, LNR has the authority to make certain decisions concerning the loans it services (p. 1).<br>- Any settlement would not binding until it is reduced to writing and signed by all parties (*see* ¶ 5 at pp. 2-3).</li><li>The parties never reached a signed settlement agreement.</li><li>Even though LNR services scores of loans, the separateness of the lender entities was always maintained as LNR always disclosed that it was acting in a representative capacity on behalf of the various lenders whose loans it serviced. The document evidences Mr. Beyman's knowledge of Petitioners' separateness and LNR's purely representative role.</li></ul> |

| **Exhibit(s)** | **Description** | **Relevance** |
|---|---|---|
| AAA | Agreement Regarding Confidentiality signed in April 2011 | ▪ Similar to the Pre-Negotiation Letter, Mr. Beyman's execution of the 2011 Confidentiality Agreement establishes that Mr. Beyman understood and agreed that LNR was acting solely "as Special Servicer" for the each of the nine "Lender" entities—including the three Petitioners—that hold loans guaranteed by Mr. Beyman.<br>▪ Mr. Beyman's became liable under his personal guaranties as a result of the borrowers' payment defaults. |
| BBB | E-mail dated June 18, 2012 | ▪ This e-mail, written by coordinating counsel for LNR (on behalf of each of the lender SPEs and their respective CMBS trusts) to coordinating counsel for Mr. Beyman, establishes that (i) Mr. Beyman and his negotiator, Robert Verrone of Ironhound Management, materially misrepresented settlement discussions concerning Mr. Beyman's guaranty liability, and (ii) no settlement had been reached between the parties (*see* pp. 1-2).<br>▪ Mr. Verrone resigned as Mr. Beyman's representative in the middle of settlement discussions (*see* p. 1).<br>▪ This e-mail chain further establishes that Mr. Beyman's history of reflexively accusing his counterparties of bad faith, even though it was Mr. Beyman and his representatives that misrepresented settlement discussions (*see* p. 3 (PETITIONERS_001330)).<br>▪ Mr. Beyman's counsel also concedes that LNR is not obligated to accept Mr. Beyman's settlement proposals (*see* p. 3 (PETITIONERS_001330)). |
| CCC, DDD | ▪ Ex. CCC - Confidential Settlement Position Statement of DMARC 2006-CD2 Indian School, LLC, dated Apr. 3, 2013 (Plaintiff in Arizona litigation)<br>▪ Ex. DDD - Defs.' Ezra Beyman, Empirian at Steele Park, LLC, and Empirian Real Estate Investors, LLC's Pre-Mediation Mem., dated Apr. 4, 2013 | ▪ In addition to engaging in years'-long settlement discussions and litigations in various courts around the country against Mr. Beyman, LNR, as special servicer and non-member manager of the various lender entities that held the loans guaranteed by Mr. Beyman, also attended mediations with Mr. Beyman in Texas and in Arizona. |

| **Exhibit(s)** | **Description** | **Relevance** |
|---|---|---|
| FFF | Email dated May 14, 2014 & attaching Master Deficiency Spreadsheet for May 15, 2014 Deficiency Meeting | ▪ The deficiency spreadsheet contains information on hundreds of loans, and is intended to provide a short summary of the status of LNR's efforts, as special servicer, to pursue recoveries under defaulted loans where a deficiency remains after a foreclosure sale.<br>▪ Petitioners' decision to pursue the involuntary petition was made <u>after</u> several years of settlement discussions, litigations that resulted in final judgments, and post-judgment enforcement efforts that proved futile (*see* PETITIONERS_003199).<br>▪ Petitioners' decision to pursue the involuntary petition was also made <u>after</u> Mr. Beyman decided to terminate settlement discussions in early 2014 (*see* PETITIONERS_003199).<br>▪ Contrary to Debtor's misrepresentations, nowhere in the spreadsheet does it state that the petition was filed to save on the expenses of collection. Rather, it states that "[t]o avoid <u>unnecessary</u> expenses, [lender's counsel] has suspended collection efforts" (*see* PETITIONERS_003199). In any event, all collection efforts proved futile. |
| GGG | Affidavit Regarding Financial Condition of Ezra Beyman dated May 3, 2011 (B00403-738) | ▪ The only comprehensive financial disclosure provided by Mr. Beyman occurred in 2011, and was prepared for a different special servicer.<br>▪ As Mr. Teiler testified during the evidentiary hearing (Tr. at 137:6-140:25, 151:12-153:16), the Statement of Net Worth dated March 31, 2011, contains material errors relating to the amount of Mr. Beyman's liabilities. Specifically, the statement double counts Mr. Beyman's guaranty liability, and, other than the portion of debt guaranteed by Mr. Beyman, the "Outstanding Debt" line item reflects non-recourse debt (*see* B00410-B00413). Thus, in reality, Mr. Beyman's business debts could never exceed his business assets.<br>▪ The material errors in the sworn financial statement evidence the lack of reliability of Mr. Beyman's financial disclosures, and underscore the need for a proper and accurate accounting of Mr. Beyman's assets and liabilities. |

| Exhibit(s) | Description | Relevance |
|---|---|---|
| III through QQQ | Personal Statements of Ezra Beyman's Net Worth, dated:<br>▪ Oct. 31, 2006 (Ex. III)<br>▪ Jan. 31, 2007 (Ex. JJJ)<br>▪ Dec. 31, 2007 (Ex. KKK)<br>▪ July 31, 2008 (Ex. LLL)<br>▪ Dec. 31, 2008 (Ex. MMM)<br>▪ Oct. 31, 2010 (Ex. NNN)<br>▪ Mar. 31, 2011 (Ex. OOO)<br>▪ June 30, 2013 (Ex. PPP)<br>▪ Sept. 30, 2014 (Ex. QQQ) | ▪ According to these statements, between July 2008 and October 2010, Mr. Beyman's personal net worth decreased by over a billion dollars, going from a positive net worth of $934 million to a negative net worth of -$109 million (Exs. LLL, NNN).<br>▪ The business interests transferred to him and his wife, as tenants in the entirety, in August 2009, were valued at nearly $400 million at the end of 2008 (Ex. MMM).<br>▪ At the time of the Involuntary Petition, Mr. Beyman's liabilities exceeded his individual assets by more than $38 million (Ex. QQQ). |
| RRR | Gift History 2006-2010, certified May 3, 2011 | ▪ Although Mr. Beyman claims to have limited assets to put towards his guaranty liability, in 2009 and 2010, when Mr. Beyman's properties defaulted due to non-payment, Mr. Beyman made gifts totaling roughly $5.5 million and $1 million, respectively. |
| SSS | Six Year Transfers, certified as of May 3, 2011 | ▪ In August 2009, at precisely the moment when his properties began defaulting, Mr. Beyman transferred between 97-100% of the holdings in his businesses into a bankruptcy-remote tenants-by-the-entirety ownership structure jointly held by him and his wife.<br>▪ There is no evidence that Mr. Beyman received any consideration for these transfers, which indicates that these transfers were designed to shield his assets from his creditors.<br>▪ As the Court ruled at the evidentiary hearing, Mr. Beyman's transfers and the lack of consideration received are relevant to this proceeding and support the need for an Order for Relief (Tr. at 133:5-134:17). |
| TTT | All Personal Guarantees, certified as of May 3, 2011 | ▪ As of May 2011, Mr. Beyman's personal liability under his guaranties, including the three guaranties held by Petitioners, totaled $66 million.<br>▪ At the time of the Involuntary Petition in September 2014, each of the guaranties held by Petitioners (relating to the Carrington Place, Chesapeake, and Inverness properties) had been reduced to a certified final judgment. |

| Exhibit(s) | Description | Relevance |
|---|---|---|
| DDDD, EEEE, FFFF, GGGG | ▪ E-mail dated Mar. 20, 2014 from D. Teiler to G. Russell discussing ownership structure of Beyman properties<br>▪ Ex. EEEE - LLC Agreement of Empire American Holdings LLC<br>▪ Ex. FFFF - First Amendment to LLC Agreement of Empire American Holdings<br>▪ Ex. GGGG - Empire American Holdings Organization Chart, dated Aug. 7, 2009 | ▪ These documents establish that as of 2006, Mr. Beyman owned 100% of his Empire American Holdings LLC, the holding company for his commercial real estate business.<br>▪ However, as of August 2009, he retained only a 2% interest in the company.<br>▪ The transfer of 98% of the economic interests in the company to a bankruptcy-remote tenants-by-the-entirety ownership structure jointly held by him and his wife, at precisely the moment when his properties began defaulting in late 2009, is evidence that Mr. Beyman was attempting to shield his assets from the reach of his creditors.<br>▪ Mr. Beyman provided no evidence that he received any consideration for this transfer. |
| KKKK, LLLL, MMMM, NNNN | ▪ Ex. KKKK - E-mails dated Jan. 15-25, 2013<br>▪ Ex. LLLL - Email dated May 24, 2013 attaching Letter dated May 24, 2013<br>▪ Ex. MMMM - E-mail dated Nov. 14, 2013 & attached Draft Compromise Settlement Agreement and Mutual Release<br>▪ Ex. NNNN E-mail from Gordon Russell, dated Dec. 9, 2014 | ▪ For the past two years, including after the Involuntary Petition was filed, Mr. Beyman has been negotiating a resolution of $15.6 million in guaranty liability under three unrelated loans.<br>▪ Mr. Beyman intends to pay the settlement amount by borrowing funds from friends or from his local Jewish community (*see* Ex. HH at pp. 90:20-93:7), thereby prejudicing all other creditors.<br>▪ Mr. Beyman has been negotiating the settlement with C-III Asset Management LLC, a special servicer. This provides further evidence that Mr. Beyman understands the distinction between a special servicer and the lender entities on whose behalf the special servicer acts. |

| **Exhibit(s)** | **Description** | **Relevance** |
|---|---|---|
| OOOO | Guaranty and Indemnity, dated June 27, 2014, relating to Texas loan | ▪ Pursuant to Section 5(k), Mr. Beyman waived his right to assert defenses to his Guaranty (*see* § 5(k) at p. 6 ("Guarantor waives and agrees not to assert any defense (except for the defense of payment) to or split causes of action or merge judgments.")).<br>▪ In *Moayedi v. Interstate 35/Chisam Rd., L.P.*, 438 S.W.3d 1 (Tex. 2014), the highest court in Texas ruled that such a waiver of defenses precludes the guarantor from relying on a unique statutory defense under Texas law that allows a guarantor to offset his or her liability based on the fair market value of property sold at a foreclosure sale (as opposed to only offsetting the sale price).<br>▪ The notion that the Involuntary Petition was filed in retaliation for an incorrect legal ruling by the trial court in the Texas guaranty action is not supported by any evidence in the record. |
| PPPP | J. dismissing appeal, dated Nov. 13, 2014 (Park Row LLC) | ▪ The appeal of the Texas trial court decision was voluntarily withdrawn by the plaintiff lender.<br>▪ Contrary to the Debtor's assertion, the termination of the appeal did not violate the automatic stay as it did not affect any interest of Mr. Beyman. |
| QQQQ | Pl.'s First Am. Original Pet., dated Aug. 1, 2014 | ▪ The Texas lawsuit brought by Mr. Beyman against LNR and Mr. Sulsky had nothing to do with Petitioners' decision to pursue the involuntary bankruptcy. Mr. Beyman's lawsuit was brought in August 2014, more than two months <u>after</u> Petitioners decided to file an Involuntary Petition (*see* Ex. II).<br>▪ The Involuntary Petition was not filed in retaliation to Mr. Beyman's Texas lawsuit, and there is no evidence whatsoever in the record to support this baseless claim.<br>▪ The Texas lawsuit does not support Mr. Beyman's assertion that the Involuntary Petition involves a "two-party dispute," as none of the defendants named in Mr. Beyman's lawsuit are parties to the Involuntary Petition. |
| RRRR | Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pl.'s First Am. Original Pet., dated Sept. 5, 2014 | ▪ Mr. Beyman's Texas lawsuit is barred by collateral estoppel and the statute of frauds, and otherwise fails to state a claim. The motion to dismiss the lawsuit has been fully briefed and the parties are awaiting a decision by the District Court. |

| **Exhibit(s)** | **Description** | **Relevance** |
|---|---|---|
| AD-45 | Mr. Beyman's Answer to the Involuntary Petition, dated Jan. 20, 2015 | ▪ By failing to file a list of creditors with his Answer as required under F.R.B.P. 1003(b), Mr. Beyman has waived his ability to contest the petition based on an insufficient number of creditors.<br><br>▪ In any event, the Involuntary Petition satisfies the three-creditor requirement, as Mr. Beyman recently conceded (*see* ECF No. 76 (letter from Debtor's counsel arguing that "Fed. R. Bankr. P. 1003(b) only applies where 'an involuntary petition [is] filed by fewer than three creditors.' That is not the situation here.") (emphasis added)). |

Dated: Baltimore, Maryland
June 5, 2015

Respectfully submitted,

VENABLE LLP

        /s/ Patrick J. Boyle
Gregory A. Cross (*pro hac vice*)
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Tel: (410) 244-7400
Fax: (410) 244-7742
gacross@venable.com

          - and -

Patrick J. Boyle, Esq.
Rishi Kapoor, Esq. (*pro hac vice*)
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Tel.: (212) 307-5500
Fax: (212) 307-5598
pjboyle@venable.com
rkapoor@venable.com

*Attorneys for Petitioners*